In the Matter of G. ARNOLD MOSES, an Attorney, Respondent.

First Department, July 14, 1922.

Attorney and client — disciplinary proceedings — attorney who has been member of bar for many years suspended for six months for representing clients in matter in which his own interest was adverse to theirs and for submitting to Supreme Court justice affidavit verified by himself containing false statement.

An attorney at law of many years' experience, who, having an interest in a tax lien upon certain premises, the lien being held in the name of his wife, accepts retainers from persons who are part owners of the land and of an award made by the city of New York for taking part of the land, to represent them in a proceeding for the distribution of the award, with full knowledge that the tax lien was a lien on the award, and thereafter takes the course with the interests of such clients that will most benefit his wife and himself, and who also submits to a Supreme Court justice an affidavit, verified by himself, containing a false statement, is guilty of serious misconduct, but in view of his age and long membership in the bar, a suspension from practice for six months is adequate punishment.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie* [*Carleton Sprague Cooke* of counsel], for the petitioner.

*George F. Allison*, for the respondent.

CLARKE, P. J.:

The respondent was admitted to practice in April, 1887 by the General Term of the Supreme Court, Second Department, and was practicing as such in the First Judicial District at the time of the commission of the acts complained of.

The petition alleges that respondent has been guilty of misconduct as an attorney at law. The first charge is in substance that an assignment of tax lien on certain premises in the county of Bronx was purchased in the name of L. Josephine Moses respondent's

wife; that though the assignment was in his wife's name, respondent nevertheless had an interest therein and the ownership thereof was subject to his control and management, and, under these circumstances, the respondent at the same time endeavored to represent certain of the owners of the award and land affected by said tax lien.

The learned official referee has summarized the facts as follows:

" I. On or about June 13, 1914, a tax lien was purchased in the name of L. Josephine Moses, wife of respondent.

" II. Prior to the purchase of this tax lien the City had awarded damages to unknown owners for the taking of part of the land affected by the tax lien.

" III. Three months after the tax lien was purchased respondent wrote to several of the heirs of one Greenwood, in whom was the title to the land so taken by the City, soliciting them to retain him as their attorney in a proceeding for the distribution of the award to unknown owners.

" IV. Some of the heirs of Greenwood retained respondent, and in about a month thereafter (September, 1914) he commenced proceedings in their behalf for the distribution of the award.

" V. In the following January, 1915, while the proceeding for the distribution of the award was pending, respondent sent to attorneys for the Greenwood heirs, whom he did not represent, a summons and complaint, wherein his wife was plaintiff and the Greenwood heirs defendants, in an action to foreclose the tax lien held in her name, and requested from the attorneys a notice of appearance.

" VI. The complaint was prepared by respondent on one of his printed forms used by him in actions of similar character; his printed name as attorney for the plaintiff was scratched, and the name of John H. Rogan inserted, and the verification was made by plaintiff (the wife) before respondent as Commissioner of Deeds.

" VII. In April, 1915, there was made an order for distribution of the award to unknown owners, and subsequently in 1915 respondent served notice of appearance in the tax lien foreclosure action in behalf of the Greenwood heirs.

" VIII. On June 28, 1915, respondent wrote to attorneys for other Greenwood heirs saying: ' Main thing is to get the tax lien paid because I could not consent to take a very small amount and release the whole without any security. * * * Will you agree on a lump sum to Mrs. Moses for her tax lien, costs, interest and a sum in addition for costs and disbursements? ' "

He also sent to the attorneys statement of costs in tax lien suit, including items for lien, costs, allowances, service on defendants,

satisfaction piece, discontinuance and disbursements. Rogan, the attorney of record, was not consulted.

" IX. The attorneys for the Greenwood heirs objected to this statement of costs, etc., and respondent replied: ' I do not propose to satisfy my tax lien unconditionally without payment in full including compensation for my services.' "

It further appears from the documentary evidence that respondent assumed charge of the conduct of the legal transactions on behalf of his wife and Mr. Rogan, her attorney, before he had been asked to represent some of the Greenwood heirs. In this connection attention is directed to petitioner's Exhibit 6, herein, being a letter or notice to the bureau of awards, signed by respondent; also to a similar letter or notice, petitioner's Exhibit 8, signed " Mrs. L. Josephine Moses, care of J. Arnold Moses, No. 38 Park Row, Manhattan, New York City." The notices and letters were dated June and July, 1914, respectively. The learned referee further reported that many letters written by the respondent did contain false and untrue statements by respondent, so admitted by him on the witness stand, and he found that under all the circumstances of this proceeding that the making of the false statements above referred to was reprehensible and unprofessional and that a thorough inspection of the documentary evidence indicates conclusively to the mind of the referee that the respondent's chief concern during the entire series of transactions was his own and his wife's interest rather than his clients; that the respondent did represent conflicting or adverse interests; that the respondent's conduct in such representation of conflicting or adverse interests was improper and unethical.

The respondent's acts and writings during the transactions here in question do not square with his explanations now, but rather lend color and weight to the inference strongly indicated by the documentary evidence as a whole, namely, that in each instance he took that course with the affairs and interests of his clients among the Greenwood heirs which would most benefit his wife and himself; that it appears that the whole course of action is apparently that of an acute experienced lawyer thoroughly knowing what he is about; that nowhere does it appear that the things done by the respondent were manifestly adverse to his own or his wife's interests; that upon the principal point of the respondent's brief, that respondent's course taken altogether really was for the best interests of his clients, the referee is compelled to find from the evidence that such is not the case for the reason that the documentary evidence shows beyond question that respondent's plan of procedure in regard to the transactions involved was not then, .

as it is now claimed to have been; the documentary evidence on this point is altogether too clear and conclusive; and he reports:

" (a) That with knowledge that the tax lien held by his wife was a lien on the award made to unknown owners, respondent sought and obtained from some of those owners (the Greenwood heirs) retainers to appear for them in a proceeding to distribute the award. ·

" (b) That after being so retained action to foreclose the tax lien held by respondent's wife was commenced in which his clients were named as defendants.

" (c) That while in such action John H. Rogan was named as attorney of record for plaintiff, yet in fact respondent in the main conducted the proceedings and held himself out as having complete control of the action.

" (d) That the acts and declarations of the respondent relating to the action and his interest therein were incompatible with his professional duty to his clients, the defendants in the action.

" (e) That the interests of his clients, the defendants in the action who were entitled to a share in the distribution of the award, were adverse to the interests of the plaintiff who sued to foreclose a lien on that award. ·

" (f) That while there is no proof that respondent's clients sustained any loss, yet the situation created by respondent and his dual attitude was potential of danger to and imperiled their interests.

" On the first charge I find the respondent guilty of misconduct as an attorney and counsellor at law."

A careful examination of the testimony and exhibits can lead but to the one conclusion, namely, that the respondent's conduct was improper and unprofessional. It is as old as holy writ that no man can serve two masters. His wife's interests were clearly adverse to those of the Greenwood heirs, whom he had solicited to be his clients, and the record is replete with evidence as to his attempts to secure advantages for himself and his wife adverse to the interests of those clients and incompatible with his duty towards them. The earnest attempt of his counsel to explain away the respondent's own letters and to account for his conduct upon the ground of mental disturbances did not impress the referee and does not impress us. We think the conclusion reached by the learned referee is in accord with the overwhelming weight of the evidence and we approve the same.

The second charge contained in the petition is as follows:

" In March, 1918, Mr. Justice MULLAN of the Supreme Court of the State of New York, filed an opinion in the case of Municipal Liens Company against James A. Glover, et al. (reported in the

New York Law Journal of March 20, 1918), in which he criticised the conduct of the respondent in said action. Thereafter the opinion was called to the attention of the Committee on Grievances of the Association of the Bar of the City of New York and on April 18, 1918, the Committee met and investigated the matter. On May 8, 1918, the respondent submitted to one of the justices of the Supreme Court an affidavit verified by him in an action entitled O'Reilly vs. Havens and others in which he referred to the criticisms contained in the aforesaid opinion filed by Mr. Justice MULLAN and then stated under oath as follows:

" ' The criticism was investigated by a full committee composed of members of the Association of the Bar of the City of New York and they have found that my practice was perfect and that the statement of facts in the opinion was not in accordance with the facts of the case.'

" At the time of the verification and filing of the said affidavit by the respondent the Committee on Grievances had not made any finding with respect to the respondent's practice or with reference to the facts stated in the opinion of Mr. Justice MULLAN and the statements to that effect in the respondent's affidavit above quoted are untrue."

As to this charge the learned referee reports as follows:

" The respondent, in his answer and his testimony admitted the facts as charged in the petition. He denied, however, that he had used the word ' found ' in a legal sense, but intended the ordinary acceptation of the meaning of the word,— ' ascertained ' or ' discovered.'

" Respondent's admissions leave little for the referee to do. All that can be said must be directed to the question of mitigation. However much the referee would like to take a lenient view of an act which in the case of a layman would be readily understandable and perhaps excusable, nevertheless he does not feel justified in accepting the respondent's explanation of this offense. The respondent was a lawyer of many years' experience. He must have known the necessity for accuracy of statement at all times but especially so under oath and in writing. He knew that he was making a paper which constituted evidence in a legal proceeding. He should have known, whether he did or not, that legal verbiage in a legal paper in a legal proceeding would receive legal interpretation. And he should have known that the word ' found ' used in the context here employed and under those circumstances would be given its legal significance by any judge to whom it might be submitted. The respondent further should have known, if he did not, that no such ' finding ' had been made, for before mak-

ing affidavit to such effect he should have satisfied himself as to the exact fact of the matter before signing his name.

" Upon the second charge I find the respondent guilty of misconduct as an attorney and counsellor at law."

We approve of the conclusion of the referee. The respondent has been at the bar for many years and has been actively engaged in extensive litigation. While we regard the acts committed, which have been found to constitute misconduct as an attorney, sufficiently serious to justify disciplinary proceedings, yet, in consideration of respondent's age and long membership in the bar, we are of the opinion that a suspension for six months will be adequate, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

LAUGHLIN, DOWLING, PAGE and MERRELL, JJ., concur.

Respondent suspended for six months. Settle order on notice.